# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| STATOIL USA E&P INC., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 4:17-cv-3664 |
| | § | |
| UNITED STATES DEPARTMENT | § | |
| OF THE INTERIOR; RYAN ZINKE, | § | |
| in his official capacity as Secretary of | § | |
| the Department of Interior; OFFICE | § | |
| OF NATURAL RESOURCES | § | |
| REVENUE; and GREGORY GOULD, | § | |
| in his official capacity as Director of | § | |
| the Office of Natural Resources | § | |
| Revenue, | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Pending before the Court are Plaintiff Statoil USA E&P Inc.'s ("Statoil")

Motion for Summary Judgment ("Statoil's Motion") [Doc. # 27], and an

"Opposition Response and Cross-Motion for Summary Judgment" ("Government's

Cross-Motion") [Doc. # 34] filed by Defendants United States Department of the

Interior ("Interior"); Ryan Zinke, in his official capacity as Secretary of Interior;

Office of Natural Resources Revenue ("ONRR"); and Gregory Gould, in his

official capacity as Director of ONRR (collectively, the "Government").  Statoil

responded to the Government's Cross-Motion and both sides filed replies.[1]  Statoil also filed a sur-reply.[2]  The American Petroleum Institute ("API") filed an amicus brief in support of Statoil's Motion.[3]  The Court held oral argument on the motions,[4] and the motions are ripe for decision.  Having considered the briefing, oral argument, applicable legal authorities, and all pertinent matters of record, the Court concludes Statoil's Motion should be **denied** and the Government's Cross-Motion should be **granted**.

## I. <u>INTRODUCTION</u>

Every month, holders of active federal oil or gas leases, like Statoil, must submit a report and pay the United States Government through ONRR a royalty based on the report filed.  Each report must state the volume of oil or gas sold, those sales' values, and what royalties are owed based on the disclosed data.  Under the Federal Oil and Gas Royalty Management Act ("FOGRMA"), an entity

---

[1]    Plaintiff Statoil's Reply in Support of Motion for Summary Judgment and Opposition to Defendants' Cross-Motion for Summary Judgment ("Statoil's Reply") [Doc. # 40]; Federal Defendants' Reply ("Government's Reply") [Doc. # 44].

[2]    Plaintiff Statoil's Surreply in Support of Motion for Summary Judgment and in Opposition to Defendants' Cross-Motion for Summary Judgment ("Statoil's Sur-Reply") [Doc. # 47].

[3]    American Petroleum Institute's Amicus Brief in Support of Statoil USA E&P's Motion for Summary Judgment ("API's Amicus Brief") [Doc. # 30-1].

[4]    *See* Hearing Minutes & Order [Doc. # 51].

with an obligation to report who "knowingly or willfully prepares, maintains, or submits false, inaccurate, or misleading reports" faces potentially stiff civil penalties. *See* 30 U.S.C. § 1719(d)(1).

This case is an Administrative Procedure Act ("APA") challenge to an administrative penalty imposed under Section 1719(d)(1). The relevant facts are not in dispute. Over a 21-month period from April 2006 to December 2007, Statoil's predecessor-in-interest underreported the amount of gas it sold, resulting in a net royalty underpayment to the Government of more than $370,000. Statoil stipulated during the administrative proceeding giving rise to this case that Statoil, in January 2011, "knew the data" in its reports "w[ere] incorrect."[5] For more than a year after January 2011, Statoil made several unfulfilled promises to correct its inaccurate reports. The Government informed Statoil in August 2011 that it could be penalized "for knowing or willful failure to maintain accurate information."[6]

In February 2012, because Statoil had not fulfilled its repeated commitments to correct the reports Statoil conceded were in error, ONRR assessed civil penalties of $406,350 against Statoil. The Government alleged that Statoil, by declining, without explanation or justification, to correct its admittedly erroneous reports on

---

[5]      Administrative Record ("R.") 20 (Notice of Civil Penalty); *see* R. 1202 (Statoil's stipulation).

[6]      R. 980 (Declaration of Karen Lee).

3

file with the Government for more than twelve months since January 2011, knowingly or willfully maintained inaccurate reports in violation of Section 1719(d)(1).

Statoil now seeks a judicial ruling invalidating the Government's interpretation of Section 1719(d)(1) and the penalty. Statoil does not challenge the $370,000 underpayment claimed by the Government.

The Court concludes that penalties under Section 1719(d)(1) were statutorily authorized and properly imposed. Consequently, the Court rejects Statoil's APA challenge.

## II.    BACKGROUND

### A.    Statutory and Regulatory Background

To develop oil and gas reserves on federal lands and the Outer Continental Shelf, the Government competitively issues oil and gas leases. When the Government issues a lease, it retains a royalty interest based on the value of oil or gas produced by the lessee. This lease and royalty system have been administered by Interior since 1920. *See* Mineral Leasing Act of 1920, Pub. L. No. 66-146, §§ 17-18, 41 Stat. 437, 443-44.

Before 1983, "the system of accounting with respect to royalties" for federal oil and gas leases was "archaic and inadequate." 30 U.S.C. § 1701(a)(2). No procedures existed to verify reported production and sales data, "and lease

account records [were] so unreliable that federal royalty managers often [did] not know which lessees [had] paid royalties and which lessees [had] not." S. REP. NO. 97-512, at 9 (1982). Lessees were rarely penalized for late payment or underpayment. *Id.* The industry was "essentially on an honor system." H.R. REP. NO. 97-859, at 15 (1982).

Congress responded by enacting FOGRMA. *See* Pub. L. No. 97-451, 96 Stat. 2447 (1983) (codified as amended throughout 30 U.S.C. §§ 1701-1757). Passed in 1983, FOGRMA commands Interior to establish a "comprehensive inspection, collection and fiscal and production accounting and auditing system" to facilitate "accurate[]" and "timely" accounting and collection of royalties. 30 U.S.C. § 1711(a). Congress conferred new duties on industry participants and granted new authority to Interior. *See id.* § 1701(b)(1)-(2). Lessees and other regulated entities must, among other things, "establish and maintain any records, make any reports, and provide any information that the Secretary [of Interior] may, by rule, reasonably require." *See id.* § 1713(a). Interior may conduct investigations, *id.* § 1717(a), hold hearings, *id.*, and prescribe rules, *id.* § 1751(a).

Pursuant to FOGRMA's grant of rulemaking authority, the Secretary of Interior has prescribed various recordkeeping and reporting rules. Any entity that must pay a royalty must send a monthly report along with its royalty payment to ONRR, 30 C.F.R. §§ 1210.51-.53, the body currently tasked with administering

Interior's royalty system, *id.* § 1201.100.  Lessees and regulated entities who submit reports, including lessees (collectively "reporters") must keep all records pertaining to federal leases for six years, *id.* § 1212.50, and must make those records available for inspection and audit, *id.* § 1212.51(c); *id.* § 1217.50.

Reporting to ONRR is currently done electronically via a Form ONRR-2014, Report of Sales and Royalty Remittance ("Form ONRR-2014"). *Id.* §§ 1210.52-.54.[7]  On these forms, reporters must "submit accurate, complete, and timely information" about their sales volume, sales value, royalty value, and deductions, among other things.  *Id.* § 1210.30; Form ONRR-2014 (Dec. 2009), *https://www.onrr.gov/reportpay/PDFDocs/2014.pdf*.  Reporters who "discover an error in a previously filed report . . . must file an accurate and complete amended report within 30 days of [the] discovery of the error."  30 C.F.R. § 1210.30. Reporters are directed by regulation to consult ONRR's handbook for reporting instructions.  *Id.* § 1210.56(a).  ONRR's handbook, in turn, instructs reporters on the procedure for correcting reports.  ONRR, Minerals Revenue Reporter

---

[7]  At times pertinent to this case, reporting was done electronically via a Form MMS-2014, Report of Sales and Royalty Remittance ("Form MMS-2014").  The Form MMS-2014 and Form ONRR-2014 are materially identical.

Handbook ("ONRR's Handbook") § 6.1 (May 1, 2015), *https://www.onrr.gov/ReportPay/Handbooks/*.[8]

To enforce FOGRMA and its associated regulations, Congress crafted a tiered penalty scheme. *See* 30 U.S.C. § 1719(a)-(d). At the lowest tier, after ONRR sends a "Notice of Noncompliance" informing a regulated entity of a possible statutory, regulatory, or lease-term violation, regulated entities that fail to correct the violation within 20 days may be penalized up to $500 for each day the violation continues without correction. *Id.* § 1719(a); 30 C.F.R. § 1214.3-.4. After 40 days without correction, the maximum daily penalty rises to $5,000. *Id.* § 1719(b).

The next tier penalizes regulated entities up to $10,000 per day (with no notice or grace period) if they knowingly or willfully fail to make a timely royalty payment; refuse to permit entry, inspection, or audit; or knowingly or willfully fail to notify Interior of the commencement or resumption of production. *Id.* § 1719(c); *id.* § 1712(b)(3).

The highest penalty tier, which contains the provision at issue in this case, penalizes entities up to $25,000 per day (again, with no notice or grace period) for

---

[8] Previous reporting handbooks also included instructions for correcting reports. Minerals Management Service, Mineral Revenue Reporter Handbook § 6.1 (July 1, 2003), *https://www.onrr.gov/ReportPay/PDFDocs/RevenueHandbook.pdf.*

each day one of three violations continues. *See id.* § 1719(d)(1)-(3). First and foremost, an entity may be penalized if it "knowingly or willfully prepares, maintains, or submits false, inaccurate, or misleading reports, notices, affidavits, records, data, or other written information." *Id.* § 1719(d)(1). Second, an entity may be penalized for "knowingly or willfully" taking, removing, transporting, using, or diverting oil or gas from a lease site without valid legal authority. *Id.* § 1719(d)(2). Third, an entity may be penalized if it "purchases, accepts, sells, transports, or conveys to another, any oil or gas knowing or having reason to know that such oil or gas was stolen or unlawfully removed or diverted." *Id.* § 1719(d)(3). In addition to carrying civil penalties, any violation of Section 1719(d) may be prosecuted criminally, with fines up to $50,000 and a maximum of two years' incarceration. *See id.* § 1720. Statoil refers to the (d)(1) provision in issue as the "paper theft" provision, in contrast to Statoil's characterization of the two others as the "physical theft" provisions.

## B. Factual Background

Statoil is a Texas-based oil and gas exploration and production company.[9] Through its predecessor-in-interest Hydro Gulf of Mexico, LCC ("Hydro"), Statoil

---

[9] Complaint [Doc. # 1], ¶ 24.

is the holder of Federal Lease Number 054-024160-0 (the "Green Canyon 199 Lease"), a lease located on the Outer Continental Shelf in the Gulf of Mexico.[10]

On August 18, 2010, ONRR's predecessor, the Bureau of Ocean Energy Management, Regulation, and Enforcement ("BOEMRE"),[11] sent Hydro an Order to Report ("Order").[12] The Order asserted that Hydro's reports from April 2006 through December 2007 for the Green Canyon 199 Lease stated incorrect gas volumes. BOEMRE based its assertion on its discovery of inconsistencies between Hydro's reported volumes and information provided by Hydro's plant operators. The Order specified the nature of the inaccuracies and attached tables documenting the discrepancies between expected and reported volume. BOEMRE directed Hydro to correct its reports within 30 days and advised Hydro of regulatory guidance and handbooks on reporting. BOEMRE further advised Hydro of its right to appeal the Order within 30 days and warned Hydro that a failure to comply could result in penalties under Section 1719 and "30 C.F.R. § 241.53 (2009)."[13]

---

[10]    R. 168.

[11]    75 Fed. Reg. 61,051, 61,052 (Oct. 4, 2010).

[12]    R. 290-92.

[13]    Then operative 30 C.F.R. § 241.53 (2009) implemented Sections 1719(a) and (b)'s civil penalties. 30 C.F.R. § 241.60 (2009), by contrast, was the corresponding regulation for knowing or willful violations under Section 1719(d).

P:\ORDERS\11-2017\3664MSJ.docx  181130.2218

On February 17, 2012, some eighteen months after BOEMRE first notified Hydro of the underreporting, ONRR's Office of Enforcement sent Hydro a Notice of Civil Penalty ("Notice of Penalty").[14]  The Notice of Penalty asserted that beginning on January 26, 2011, ONRR's Audit and Compliance Management ("ACM") office made numerous requests to correct reporting inaccuracies identified in the August 2010 Order.  According to the Notice of Penalty, "[e]ach time Hydro was contacted, it made an unfulfilled promise to correct the inaccurate [reports] or did not respond."[15]  The Notice of Penalty asserted that Hydro had a "discussion" with ACM on January 26, 2011, after which "it became indisputable that [Hydro] knew the data" in its reports "w[ere] inaccurate."[16]  The Notice of Penalty further explained that after the January 26 discussion, the matter was referred to ONRR's Office of Enforcement, who contacted Hydro on May 23, 2011, about the status of corrections.  Hydro, ONRR alleged, "acknowledged the information was incorrect" and "agreed to make the corrections in one week" but "none were made."[17]  The Notice of Penalty further asserted that, on August 22,

---

[14]    R. 19-21.  This Notice of Penalty is different from and not to be confused with the Notice of Noncompliance sent pursuant to Section 1719(a) and 30 C.F.R. § 1241.3-.4.

[15]    R. 19.

[16]    R. 20.

[17]    R. 20.

2011, Hydro again "acknowledged" that "there were discrepancies in the [gas] volumes."[18]  The Notice of Penalty added that in an email on September 5, 2011, Hydro admitted that its reports needed correction, but Hydro continued to maintain the inaccurate information on ONRR's database.[19]

The Notice of Penalty assessed civil penalties under 30 U.S.C. § 1719(d)(1) against Hydro "for its knowing or willful maintenance of incorrect information on gas sales volume reported to" ONRR.[20]  ONRR deemed each of Hydro's 21 uncorrected monthly reports a separate violation and assessed a daily penalty for each violation starting on January 27, 2011, the day after Hydro's discussion with ACM.  The Notice of Penalty informed Statoil that it was being fined $50 per violation per day rather than the statutory maximum of $25,000 per violation per day.  ONRR calculated that Statoil owed $406,350 in penalties, over and above the $370,293 in unpaid royalties.[21]

On March 23, 2012, Statoil paid all accrued penalties under protest.[22]

---

[18]     R. 20.

[19]     R. 20.

[20]     R. 19.

[21]     R. 626.

[22]     Federal Defendants' Answer to Plaintiff's Complaint ("Answer") [Doc. # 22], ¶ 54; R. 16.

Statoil did not fully correct all its reports until July 2012, almost two years after the August 2010 Order.[23]

## C. Procedural Background

On March 28, 2012, Statoil requested a hearing to challenge ONRR's penalty.[24] Statoil's request was referred to an Administrative Law Judge ("ALJ") within Interior.

Without any discovery, both ONRR and Statoil moved for summary judgment before the ALJ.[25] Each requested resolution of threshold legal issues.[26] ONRR sought summary judgment that a reporter "maintains" inaccurate information by not correcting its information on file with ONRR.[27] ONRR also sought summary judgment that Statoil's conduct was "knowing or willful."[28] Statoil moved for summary judgment that: (1) regulated entities only "maintain" documents they retain internally; (2) reporters may be penalized exclusively under Sections 1719(a) and (b), not Section 1719(d), for failures to correct violations

---

[23]    Answer [Doc. # 22], ¶ 58; R. 219.

[24]    R. 15-16.

[25]    R. 475-502, 576-97.

[26]    R. 477, 576.

[27]    R. 576.

[28]    R. 596.

after notice from ONRR; and (3) Section 1719(d)(1) penalties may only be imposed on reporters that intend to defraud the Government.[29]

The ALJ granted summary judgment in part for ONRR and denied summary judgment for Statoil.[30]   Siding with ONRR, the ALJ ruled that "maintains" encompasses keeping information on file with ONRR without necessary correction.[31]  The ALJ, however, sided with Statoil that it was premature to rule on whether Statoil acted "knowingly or willfully" as the parties had not conducted discovery and there was a genuine factual dispute over the issue.[32]

After the ALJ ruled, Statoil requested leave to file an interlocutory appeal.[33] According to Statoil, the controlling question of law for appeal was whether under 30 U.S.C. § 1719(d)(1) Statoil could be penalized "for knowingly or willfully maintaining incorrect information on [reports] previously submitted to ONRR."[34]

---

[29]   R. 477-78.

[30]   R. 801.

[31]   R. 801.

[32]   R. 799-01.

[33]   R. 813, 815.

[34]   R. 816.

The Interior Board of Land Appeals ("IBLA"), an administrative appeals board within Interior, granted leave to file the interlocutory appeal.[35]  The ALJ suspended proceedings below pending the IBLA's decision.[36]

On April 29, 2015, the IBLA affirmed the ALJ's decision "to the extent" he ruled that ONRR was entitled under Section 1719(d)(1) "to assess civil penalties for knowingly or willfully failing to correct inaccuracies in its royalty reporting." *Statoil USA E&P, Inc.*, 185 I.B.L.A. 302, 319 (2015).  The IBLA did not rule on "whether Statoil knowingly or willfully 'maintain[ed]' inaccurate information in its royalty reporting." *Id.* at 303-04. (alteration in original).  Consequently, the IBLA noted "it remains to be determined whether ONRR can demonstrate that Statoil's failure to act was, in fact, knowing or willful, starting" on January 27, 2011. *Id.* at 318.[37]

---

[35]  R. 833-38, 841-43.

[36]  R. 837.

[37]  After the IBLA's decision, ONRR amended its relevant civil penalty regulations. *See* 81 Fed. Reg. 50306 (Aug. 1, 2016) (codified at 30 C.F.R. pt. 1241).  Under current regulations:

> Maintains false, inaccurate, or misleading information includes providing information to an ONRR data system, or otherwise to us for our official records, and later learning that the information that you provided was false, inaccurate, or misleading, and you do not correct that information or other information that you provided to us that you know or should know contains the same false, inaccurate, or misleading information.

(continued…)

After the IBLA ruled, Statoil filed suit in the Southern District of Texas challenging the IBLA's interlocutory decision. Complaint, *Statoil USA E&P Inc., v. U.S. Dep't of the Interior*, No. 4:16-cv-00860 (S.D. Tex. Mar. 31, 2016) [Doc. # 1].

While this federal suit was pending, Statoil requested the ALJ issue an order affirming ONRR's penalty and concluding administrative proceedings.[38] Statoil "expressly waive[d] all other defenses or arguments . . . , other than the controlling legal question surrounding ONRR's interpretation of [Section] 1719(d)."[39] Statoil further "stipulat[ed] to the facts as alleged by ONRR in its Notice of Civil Penalty and the administrative record."[40]

On April 10, 2017, the ALJ accepted Statoil's waiver, affirmed ONRR's penalty based on the IBLA's resolution of the interlocutory appeal against Statoil, and deemed the administrative matter concluded.[41] Statoil then appealed to the IBLA, reaffirming its express waiver and requesting the IBLA affirm the ALJ's

---

(continued…)
30 C.F.R. § 1241.3 (effective Aug. 31, 2016).

[38]    R. 1203-05.

[39]    R. 1203-04.

[40]    R. 1204.

[41]    R. 1142-43.

order.[42]  On September 29, 2017, the IBLA dismissed Statoil's appeal for failure to allege error in the ALJ's April 2017 order.[43]  The same day, the district court dismissed Statoil's case for failure to challenge a final agency action.  *See Statoil USA E&P Inc. v. U.S. Dep't of the Interior*, No. 4:16-cv-00860, 2017 WL 7053924, at *8 (S.D. Tex. Sept. 29, 2017).  On October 23, 2017, the district court amended its opinion to delete its prior finding that the ALJ's April 2017 order was not final and clarified that the ALJ's order left no issues open to be resolved by the agency.  Order Granting Plaintiff's Fed. R. Civ. P 59(E) Motion for Limited Reconsideration, *Statoil USA*, No. 4:16-cv-00860 (S.D. Tex. Oct. 23, 2017) [Doc. # 48].

On December 1, 2017, Statoil filed this lawsuit.[44]  Statoil challenges the ALJ's decision under the APA as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."[45]  *See* 5 U.S.C. § 706(2)(A), (C).  It also seeks a declaration that the Government's interpretation

---

[42]    R. 1238-76.

[43]    R. 1184-87.

[44]    Complaint [Doc. # 1].

[45]    *Id.* ¶ 88.

of Section 1719(d)(1) is unlawful and contrary to the statute.[46]  *See* 28 U.S.C. § 2201(a).

Both parties move for summary judgment.[47]  Statoil moves for summary judgment that the Government's interpretation of Section 1719(d)(1) is contrary to FOGRMA and seeks vacatur of ONRR's penalty.[48]  The Government moves for summary judgment that its interpretation and ONRR's penalty are legally valid.[49] Both sides agree that the administrative record constitutes the universe of relevant facts and that there are no disputes of material fact.

## III.   <u>LEGAL STANDARDS</u>

### A.   Summary Judgment

Under Federal Rule of Civil Procedure 56, "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."  FED. R. CIV. P. 56(a). Summary judgment on a claim or part of a claim is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is

---

[46]  *Id.* ¶¶ 91, 92.

[47]  Statoil's Motion [Doc. # 27]; Government's Cross-Motion [Doc. # 36].

[48]  Statoil's Motion [Doc. # 27], at 25.

[49]  Government's Cross-Motion [Doc. # 36], at 1.

entitled to judgment as a matter of law." *Seacor Holdings, Inc. v. Commonwealth Ins. Co.*, 635 F.3d 675, 680 (5th Cir. 2011) (quoting Fed. R. Civ. P. 56(a)).

## B.    Administrative Procedure Act

Under the APA, courts shall "hold unlawful and set aside agency actions, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."   5 U.S.C. § 706(2)(A), (C).   "[W]hen a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001).   "The 'entire case' on review is a question of law." *Id.* (quoting *Marshall Cty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993)).   "Summary judgment thus serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Grinin v. Johnson*, 224 F. Supp. 3d 525, 530 (S.D. Tex. 2016) (quoting *Stuttering Found. of Am. v. Springer*, 498 F. Supp. 2d 203, 207 (D.D.C. 2007)).

## C.    The *Chevron* Framework

*Chevron, U.S.A., Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837 (1984), prescribes a "two-step procedure for evaluating whether an agency's interpretation of a statute is lawful." *See Nat'l Cable & Telecomm. Ass'n v. Brand X Internet*

*Servs.*, 545 U.S. 967, 986 (2005). "'Step one' provides that if the statute is clear, then the plain meaning of the statute applies, whatever it is." *Adkins v. Silverman*, 899 F.3d 395, 401 (5th Cir. 2018). If Congress has "directly spoken to the precise question at issue" then no deference is owed to the agency. *See Texas v. United States*, 497 F.3d 491, 501 (5th Cir. 2007). "[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843. "Step two" requires deference to the agency's interpretation "so long as it is reasonable." *Adkins*, 899 F.3d at 401.

## IV.  **DISCUSSION**

Statoil's briefing does not neatly distinguish among the various grounds for its challenge. Statoil appears to offer four distinct arguments. First, Statoil contends that "maintains" in Section 1719(d)(1) refers only to regulated entities' internally kept records, not external reports that reporters have filed with ONRR. Second, Statoil argues that Section 1719(d)(1) covers only criminally punishable conduct and thus requires proof that the regulated entity intended to defraud the Government. Third, Statoil contends the Government's theory amounts to penalizing a reporter's failure to correct after notice from ONRR of errors in reports, supplanting the statutory role reserved for Sections 1719(a) and (b).

Fourth, Statoil argues that it lacked "fair notice" that it could be penalized under Section 1719(d)(1) for maintaining inaccurate reports with ONRR.

None of these arguments avail Statoil. In short, its first and second theories ignore Section 1719(d)(1)'s plain language and FOGRMA's manifest purposes. The third argument is not properly before the Court because of Statoil's factual concessions. Statoil's fourth argument is waived and lacks merit. Accordingly, Statoil's Motion will be **denied** and the Government's Cross-Motion will be **granted**.

### A.    "Maintains" in Section 1719(d)(1) Encompasses Previously Submitted Reports Left on File with ONRR Without Amendment

The seminal issue is whether, under Section 1719(d)(1), a reporter "maintains" reports it submits and leaves on file with ONRR for a prolonged period without amendment. Statoil contends that throughout FOGRMA "maintains" refers only to an entity's retention of its internal records. The Government contests this reading, arguing that the term "maintains" in Section 1719(d)(1) encompasses reports previously submitted to ONRR and left on file without amendment. The Court agrees with the Government.

Initially, the parties dispute the level of deference owed to the Government's interpretation. The Government insists its interpretation should receive deference under the *Chevron* framework. Statoil counters that greater scrutiny is required. First, Statoil contends that the Government's utilization of authority broader than

20

previously exercised under a mature statute like FOGRMA is suspect. Second, Statoil argues that it makes an *ultra vires* challenge that should be reviewed without deference to the Government's interpretation. Third, Statoil argues that Section 1719(d)(1) is a hybrid statute, *i.e.*, a statute with both civil and criminal applications, WILLIAM N. ESKRIDGE JR., INTERPRETING LAW 334 (2016), that should be strictly construed.[50]

The Court concludes, for the reasons stated below, that Section 1719(d)(1) is clear and covers Statoil's relevant conduct. Because the statute is unambiguous, its "plain meaning" applies, *see Adkins*, 899 F.3d at 401, and the level of deference owed to the Government is irrelevant. Were the statute ambiguous, the Government's interpretation would still prevail. For the reasons stated below, the Government's interpretation is reasonable under *Chevron*'s second step, and, at the very least, prevails not "by reason of [its] authority," but based solely on "those factors which give it power to persuade." *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).

The ordinary meaning of Section 1719(d)(1) confirms the Government's reading. FOGRMA leaves "maintain" undefined, so the Court gives the term its ordinary, plain meaning. *See Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560,

---

[50]    Below, the Court considers and rejects the argument that Section 1719(d)(1)'s strict construction favors Statoil.

566 (2012).  In ordinary usage, "maintain" encompasses keeping a thing in, or affirming a thing is in, a state of validity.  *See maintain*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1961) ("[T]o keep in a state of repair, efficiency, or validity"; "to affirm in or as if in argument.").  Submitting a report and leaving it on file constitutes an affirmation of the report's continued validity.  Submitted reports must provide accurate information.  *See* 30 C.F.R. § 1210.30.  Under ONRR regulations and procedures implementing FOGRMA, when a reporter discovers inaccuracies in a report it filed with ONRR, the reporter must amend its report within 30 days.  *See id.*; ONRR's Handbook, *supra*, § 6.1.  Reporters can access their past reports and make amendments as needed.  ONRR's Handbook, *supra*, §§ 6.1-6.1.1.  In other words, reports on file with ONRR are expected to be in a state of validity and reporters represent their reports remain valid.  They "maintain" the reports.

Statoil contests this interpretation.  It urges that ONRR, not reporters, hosts the servers where reports are housed.  So, according to Statoil, ONRR is in fact the entity that "maintains" submitted reports.  This literal interpretation is unpersuasive.  It stands to reason that two entities can "maintain" the same database in different respects.  In any event, ONRR's hosting an electronic filing system does not establish that ONRR "maintains" reporters' reports on that system.  A student "maintains" stellar grades, even though it is her school that stores the

physical or electronic records of her grades.  A teenager might "maintain" his car, even though his parents maintain the garage where it is parked.  Similarly, a reporter that files with ONRR "maintains," within the ordinary sense of the term, the reports, data, and other written information on ONRR's system that the reporter submits, even though ONRR hosts the system.  Notably, Statoil cites no provision indicating that ONRR has authority to alter sales and royalty reports submitted under FOGRMA, and the Court's review has disclosed no authority granted to ONRR to do so.

Beyond the text of Section 1719(d)(1), FOGRMA offers strong contextual support for the Government's interpretation.  "[M]aintains" in Section 1719(d)(1) refers to "*reports*, notices, *affidavits*, records, data, or other written information." *See* 30 U.S.C. § 1719(d)(1) (emphasis added).  "Reports" and "affidavits" are not the sorts of documents typically kept for internal purposes.  Indeed, throughout FOGRMA, "reports" and "affidavits" refer to documents submitted to ONRR. *See, e.g.*, *id.* § 1702(17) ("'[A]djustment' means an amendment to a previously *filed report* on an obligation." (emphasis added)); *id.* § 1712(a) ("[A] designated person may . . . *submit reports* with respect to payments required by the lessee." (emphasis added)); *id.* § 1717(a)(1) ("[T]he Secretary [may] require . . . any person to *submit* in writing *such affidavits* . . . as the Secretary may reasonably prescribe . . . ." (emphasis added)).

By contrast, when "maintain" is used outside of Section 1719(d)(1) to impose duties upon regulated entities, the term almost exclusively refers to internally kept "records" or "documents."[51]  FOGRMA directs that regulated entities "shall establish and maintain any records" reasonably required by Interior. *Id.* § 1713(a).  Those required "[r]ecords . . . shall be maintained for 6 years after the records are generated" unless Interior notifies "the record holder" of an audit or investigation and that "such records must be maintained for a longer period." *Id.* § 1713(b).   Regulated entities engaged in oil or gas transportation "shall maintain documentation showing," the amount of oil or gas, its origin, and its intended first destination.  *Id.* § 1712(c)(2).

FOGRMA also uses "maintain" to specify the duties and authority of Interior.   For instance, Interior must "implement and maintain a royalty management system," 30 U.S.C. § 1101(b)(2), and "establish and maintain adequate programs providing for training" of inspectors, accountants, and auditors, *id.* § 1711(b)(2).

This variation across FOGRMA demonstrates that Congress used "maintain" in various contexts but knew how to limit the term with regard to a regulated entity

---

[51]    30 U.S.C. § 1716(2) requires certain regulated entities "to maintain a bond commensurate with the amount of money for which such individual could be liable to the United States."

and its internal documents when it chose to do so.  In contrast, Congress chose in Section 1719(d)(1) to list various externally-kept documents, *i.e.*, affidavits, reports, among the grounds for a potential penalty.  This choice is strong evidence favoring the Government's interpretation that "maintains" in that provision includes a reporter's reports submitted to ONRR.

Statoil alternatively asks the Court to read into the verb sequence of "prepares, maintains, and submits" in Section 1719(d)(1).  According to Statoil, because "maintains" is wedged between "prepares" and "submits," "maintains" covers internal retention after preparation and before submission.  This argument is unconvincing.  Statoil cites no "sequence" canon and the Court has found none in its research.  In everyday speech and writing, some verb sequences imply a strict order (*e.g.*, shake and (then) bake; stop, drop, and (then) roll).  But many do not (*e.g.*, preserve, protect, and defend; "form a more perfect Union, establish Justice, insure domestic Tranquility, provide for the common defence, promote the general Welfare, and secure the Blessings of Liberty to ourselves and our Posterity"[52]).  Given the context surrounding the verb sequence, a non-sequential reading is appropriate.

---

[52]     U.S. CONST. pmbl.

Statoil's interpretation of "maintains" does not comport with FOGRMA's manifest purpose and drafting history. Statoil agrees Section 1719(d)(1) penalties may be assessed against regulated entities that knowingly retain inaccurate internal records. For Section 1719(d)(1) to cover these regulated entities' internal information but not cover entities who knowingly keep inaccurate reports on file with ONRR would be incongruous. Both sets of information need to be accurate for ONRR to verify lessee data and ensure timely and accurate royalty accounting and collection. During FOGRMA's drafting, Congress expressed concern for the validity of information on file with the Government. Congress identified the "fundamental problem with royalty accounting" was the "disarray" of the Government's accounts, not lessees' records. *See* H.R. REP. NO. 97-859, at 15-16. Given Congress's concern for the state of the Government's accounts, it would be incomprehensible for it to impose the strictest sanction for reporters internal retention of inaccurate records while allowing only lighter sanctions for knowingly or willfully keeping inaccurate information on file with the Government.

Statoil attempts to draw on legislative history to support its contention that Congress distinguished between internal and external record maintenance. Statoil cites language from the Senate Committee Report, stating that, with FOGRMA, Congress sought balance

> between the need to deter violations . . . and the need to avoid a
> situation in which exposure to very severe penalty liability for

relatively minor or inadvertent violations of necessarily complex regulations becomes a major disincentive to produce oil or gas from lease sites on federal or Indian Land.

S. REP. NO. 97-512, at 17.

This excerpt does not assist Statoil. It indicates that Congress did not wish to severely penalize "inadvertent" or "relatively minor" violations. In contrast, all violations of Section 1719(d)(1) are necessarily "knowing[] or willful[]," and thus not "inadvertent." The quoted material also provides no guidance over what Congress deemed a "relatively minor" violation.

Observing that Sections 1719(d)(2) and (3) should be construed to penalize "physical theft" of oil and gas, Statoil contends that knowing maintenance of inaccurate information with ONRR is "minor" relative to the other conduct penalized by Section 1719(d). The Court disagrees. As demonstrated by the facts of Statoil's case, incorrect records on file with ONRR that understate a reporter's oil and gas sales result in artificially small royalties paid to the Government. This "paper theft," as Statoil calls it, is a seminal part of what FOGRMA was designed to address. The so-called paper theft results in artificially low royalties paid to the Government, just as physical theft does.

Moreover, knowingly maintaining inaccurate information with ONRR is not "minor" relative to conduct Statoil concedes *is* subject to Section 1719(d)(1), *i.e.*, knowing maintenance of inaccurate internal records. As noted, it would be

incongruous to deem internal record maintenance a major violation worthy of sanction under Section 1719(d)(1) but, at the same time, deem the maintenance of inaccurate reports on file with ONRR, on which ONRR principally relies for determination of royalties due, a minor violation. Both are likely to result in royalty underpayments to the Government.

In sum, the Court concludes Statoil "maintained" its inaccurate reports, within the meaning of Section 1719(d)(1), by submitting them to ONRR and leaving them on file for a prolonged period without amendment.

## B. Section 1719(d)(1) Does Not Require Proof of an "Intent to Defraud"

Statoil contends that because Section 1719(d)(1) is a punitive provision incorporated by reference into Section 1720,[53] a criminal statute, Section 1719(d)(1) requires proof the reporter, lessee, or other regulated entity intended to defraud the Government. According to Statoil, Section 1719(d)(1) thus means the reporter must intend to deceive the Government and deprive it of royalties. Statoil contends, and the Government does not contest, that Statoil lacked such a malevolent mental state.

---

[53]     30 U.S.C. § 1720 provides:

> Any person who commits an act for which a civil penalty is provided in section 1719(d) of this title shall, upon conviction, be punished by a fine of not more than $50,000, or by imprisonment for not more than 2 years, or both.

Assuming, without deciding, that Section 1719(d)(1) should be interpreted with the stringency of a criminal statute, the Court is unpersuaded by Statoil's argument. In effect, Statoil requests the Court graft an extratextual, heightened mental state requirement onto Section 1719(d)(1). To the contrary, Section 1719(d)(1) is clear regarding the mental state required. Section 1719(d)(1) is not violated unless the reporter's conduct is done either "knowingly or willfully." Neither of these mental state elements indicates, even in a criminal context, that the Government must prove intent to defraud. "[T]he term 'knowingly' merely requires proof of knowledge of the facts that constitute the offense," unless "the text of the statute dictates a different result." *Dixon v. United States*, 548 U.S. 1, 5 (2006) (quoting *Bryan v. United States*, 524 U.S. 184, 193 (1998)). So, to demonstrate a "knowing" violation of Section 1719(d)(1), the Government must prove the entity knew the information it "prepare[d], maintain[ed], or submit[ted]" was "false, inaccurate, or misleading."

For "willful" conduct, the term is sometimes "said to be 'a word of many meanings' whose construction is often dependent on the context in which it appears." *See Bryan*, 524 U.S. at 191 (quoting *Spies v. United States*, 317 U.S. 492, 497 (1943)). Statoil cites none of those "many meanings" which might support its construction. "As a general matter, when used in the criminal context, a 'willful' act is one undertaken with a 'bad purpose.'" *Id.* "In other words, in order

to establish a 'willful' violation of" Section 1719(d)(1), 'the Government must prove that the [entity] acted with knowledge that [its] conduct was unlawful,'" *see id.* at 191-92 (quoting *Ratzlaf v. United States*, 510 U.S. 135, 137 (1994)), not with intent to defraud.  *Cf.* PATTERN CRIM. JURY INSTR. 5TH CIR. 1.38 (2015) ("The word 'willfully,' as that term has been used from time to time in these instructions, means that the act was committed voluntarily and purposely, with the specific intent to do something the law forbids; that is to say, with bad purpose either to disobey or disregard the law.").

The Court declines Statoil's invitation to incorporate an additional, unenumerated mental state element into Section 1719(d)(1). "The definition of the elements of a criminal offense is entrusted to the legislature."  *Liparota v. United States*, 471 U.S. 419, 424 (1985).  Had Congress wished to, it could have specified that intent to defraud was an element of Section 1719(d)(1) or used the term "fraud."  Instead, Congress specified two alternate mental state elements, "knowingly or willfully."  "It is these specific mental states, rather than some vague 'evil mind,' or '"criminal" intent,' that the Government is required to prove . . . ."  *See Dixon*, 548 U.S. at 7 (internal citations omitted).

Aside from its text, FOGRMA's manifest purpose and drafting history corroborates that no proof of intent to defraud is required.  FOGRMA was not enacted to punish wrongdoing recognized as criminal under the common law.  It

was enacted to facilitate "accurate[]" and "timely" royalty accounting, a goal furthered by a less-culpable mental state requirement. *See* 30 U.S.C. § 1711(a). Moreover, when given the opportunity, Congress declined to make Section 1719(d)(1) more closely resemble criminal fraud. Notably, Congress rejected a proposed amendment which would have limited Section 1719(d)(1)'s scope to "significantly" inaccurate or "materially" misleading information. *See* S. Rep. No. 97-512, at 50.

In sum, "intent to defraud" is not an element of Section 1719(d)(1). As the text, purpose, and history of Section 1719(d)(1) make clear, the Government only needed to prove the violation was "knowing[] or willful[]." Accordingly, the Government properly alleged and established, via Statoil's stipulation that it "knew" its data was incorrect, the mental state element for Section 1719(d)(1) penalties.

**C.    Under the Government's Interpretation, Sections 1719(a) and (b) Retain a Role Distinct from Section 1719(d)(1)**

Statoil contends that the Government's interpretation allows ONRR to "manufacture" a "knowing or willful" violation and contravenes Section 1719's tiered penalty structure by using Section 1719(d)(1) to supplant Sections 1719(a) and (b)'s statutory roles. Contrary to Statoil's assertion, under the Government's interpretation, Sections 1719(a) and (b) retain their distinct statutory role from Section 1719(d).

As previously stated, under Section 1719(a), ONRR may impose a penalty of up to $500 for each day any statutory, regulatory, or lease-term violation continues if that violation is not corrected within 20 days "after due notice of violation." Under Section 1719(b), the maximum daily penalty escalates to $5,000 after 40 days without correction. During the relevant time period and currently, "due notice of violation" under these provisions is transmitted by ONRR to regulated entities via a "Notice of Noncompliance." *See* 30 C.F.R. § 1241.3-.4.

Statoil characterizes the Government's interpretation as follows: once a reporter receives notice, *i.e.*, a communication from ONRR of a reporting inaccuracy, the reporter immediately "knows" its reports are inaccurate and is thus subject to Section 1719(d) penalties. As a result, according to Statoil, the Government's interpretation provides an unjustified shortcut around Sections 1719(a) and (b). These more lenient provisions, Statoil contends, were designed to afford regulated entities an opportunity to correct their errors after notice of a violation, a path the Government's interpretation of Section 1719(d)(1) eliminates.

Statoil's challenge is rejected. It is not properly before the Court. To raise its interpretative point, Statoil must hypothesize rulings and remove stipulated facts from the record. Statoil creates a strawman, namely, it attacks an agency ruling that a reporter "knows" its reports are inaccurate when the reporter receives from ONRR a notice alleging an error in a report filed by the reporter. No such agency

32

ruling exists in this case. ONRR's February 2012 Notice of Civil Penalty to Statoil

did not assert, and the IBLA never ruled, that notice of the agency's contention of a

reporting error automatically establishes "knowledge" by the reporter of a false or

inaccurate report. Indeed, the IBLA affirmatively ruled that although it was

uncontested that Statoil received notice from ONRR, "it remain[ed] to be

determined whether ONRR can demonstrate that Statoil's failure to act was, in

fact, knowing or willful."[54] Nor is such a rule necessary to sustain ONRR's

penalty. The stipulated record[55] is that Hydro "knew the data was incorrect" as

evidenced by its unfulfilled promises to correct its reports.[56] Given this stipulation,

the Court has no occasion to decide whether mere notice establishes knowledge. In

sum, there is no agency ruling that "notice" automatically confers "knowledge" of

---

[54] *Statoil*, 185 I.B.L.A. at 318.

[55] R. 1202 (Statoil's stipulation to the facts in ONRR's Notice of Penalty).

[56] R. 19-21 (ONRR's Notice). The Notice of Penalty asserted that after Hydro (Statoil's predecessor) had a "discussion with ACM" on January 26, 2011, "it became indisputable that [Hydro] knew the data" in its reports "w[ere] incorrect." R. 20. As a result of Statoil's stipulation and decision to forgo any discovery, the exact contents of this "discussion" are not in the administrative record. What is clear from the Notice of Penalty, however, is that "[e]ach time Hydro was contacted, it made an unfulfilled promise to correct the inaccurate [reports] or did not respond." R. 19. The existence of a "discussion" establishes in the uncontested record that Hydro did respond on January 26, 2011. Further, Hydro made unfulfilled promise in May and September 2011 to correct its inaccurate reports and admitted that its reports were inaccurate. Hydro stipulated it "made an unfulfilled promise to correct the inaccurate [reports]." R. 19. Such promises demonstrate knowledge of the inaccuracies beyond mere notice.

that inaccuracy upon the reporter. Nor does the record require the Court to adopt such a rule to sustain ONRR's penalty.

Because there is no agency ruling that ONRR's notice automatically confers knowledge of a Section 1719(d)(1) violation, Statoil's attack is a mere strawman and it fails. Sections 1719(a) and (b) retain their distinct role from Section 1719(d). Section 1719(a) and (b) remain catch-all penalty provisions, penalizing all statutory, regulatory, and lease-term violations after receipt of a Notice of Noncompliance and an opportunity to cure, without regard to the regulated entity's mental state. Section 1719(d)(1) penalizes a narrow set of "knowing or willful" violations, which, as a matter of logic,[57] cannot be, and were not in this case, established by receipt of a Notice of Noncompliance or mere notice from ONRR of a violation.

---

[57] If the Government's position were that notice automatically confers knowledge, the Court would not sustain such a rule. As a matter of logic, notice only gives a reporter knowledge that the Government believes the reporter's information on file is inaccurate. The reporter nevertheless may have good faith reasons to believe in the accuracy of its reports. Or the reporter may simply not have formed an opinion as to whether Government's view on its reported information is correct. For instance, in this case, knowledge is demonstrated and (and stipulated to) by a promise from the reporter to correct its inaccurate reports after conceding the need for correction, and refusal, without explanation, to do so.

**D.    Statoil's "Fair Notice" Argument Is Waived and Lacks Merit in Any Event**

Statoil contends that it lacked requisite "fair notice" of its exposure to penalties under Section 1719(d)(1).    According to Statoil, the Government concedes Statoil was the first entity penalized for knowingly or willfully maintaining incorrect reports with ONRR under Section 1719(d)(1).[58]    The Government contends Statoil's fair notice challenge is waived and that, in any event, Statoil had fair notice based on the text and application of Section 1719(d)(1).

"There are three related manifestations of the fair warning requirement." *United States v. Lanier*, 520 U.S. 259, 266 (1997).    Statoil does not clearly articulate which manifestation (or manifestations) it invokes.    The Court reviews all three and concludes that none avail Statoil.

First, there is the vagueness doctrine.    This doctrine "bars enforcement of 'a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.'"    *Id.* (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926)).    Statoil does not cite the vagueness doctrine or cases applying it.    The Court will not give the doctrine further consideration.

---

[58]    *See* Answer [Doc. # 22], ¶ 38.

Second, there is "the canon of strict construction of criminal statutes, or rule of lenity." *Id.* This doctrine "ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered." *Id.* Statoil appears to invoke the rule of lenity when it calls for "strict construction" of Section 1719(d)(1) and cites cases applying the rule.[59] Assuming Section 1719(d)(1) should be construed as if it were a criminal statute,[60] the rule does not avail Statoil. "The rule of lenity only applies if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute, such that the Court must simply guess as to what Congress intended." *United States v. Castleman*, 572 U.S. 157, 172-73 (2014) (quoting *Barber v. Thomas*, 560 U.S. 474, 477 (2010)). Statoil does not argue, much less establish, that Section 1719(d)(1) suffers from "a grievous ambiguity or uncertainty." *See id.* As demonstrated by the preceding sections' analysis of FOGRMA's "text, structure, history, and purpose," Section 1719(d)(1) has a determinate meaning which encompasses Statoil's conduct. *See id.*

---

[59] Statoil did not expressly waive application of the rule of lenity because the rule is one "of statutory construction whose purpose is to help give authoritative meaning to statutory language." *See United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505, 518 n.10 (1992).

[60] Again, the Court assumes without deciding that Section 1719(d)(1) should be construed as if it were a criminal provision.

Third, the last manifestation of the fair warning requirement emanates from a principle of "due process" that "bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *Lanier*, 520 U.S. at 266. The "touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *Id.* at 267. Statoil does not properly raise the doctrine before this Court. Statoil does not discuss a due process theory in the text of its several briefs; it merely refers to "due process" once in a footnote within a parenthetical quotation to an out-of-circuit case.[61] "Arguments subordinated in a footnote are 'insufficiently addressed in the body of the brief,' and thus are waived." *See Arbuckle Mountain Ranch of Tex., Inc. v. Chesapeake Energy Corp.*, 810 F.3d 335, 339 n.4 (5th Cir. 2016) (quoting *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 356 n.7 (5th Cir. 2003)).

In any event, Statoil expressly waived this due process argument during administrative proceedings. Before the ALJ and the IBLA, Statoil expressly waived any defense other than the "single, purely legal issue" of whether "under Section 1719(d)(1)" Statoil can be penalized "for knowingly or willfully

---

[61]    *See* Statoil's Motion [Doc. # 27], at 24 n.12.  Indeed, the case is within a string of citations and is introduced by "*see also*."

maintaining incorrect information on [reports] previously submitted to ONRR."[62]

Accordingly, by its own agreement, Statoil's surviving challenge addresses the ultimate legal meaning of Section 1719(d)(1), not whether Statoil's due process rights were violated by the lack of a previous definitive resolution of the Section's meaning.

Finally, for the reasons stated in the preceding sections, the Court concludes that, "standing alone," FOGRMA makes it "reasonably clear" that Statoil's conduct was subject to sanction under Section 1719(d)(1). *See Lanier*, 520 U.S. at 267. Statoil was given adequate notice of exposure to this sanction. The Government's interpretation of "maintains" comports with the term's ordinary meaning and reflects FOGRMA's manifest purposes of requiring accurate reporting of product sales, informed calculations of royalties due to the Government, and timely collection of those royalties. Section 1719(d)(1)'s text makes it reasonably clear that it does not include an intent to defraud element. Statoil was penalized under Section 1719(d)(1) because it acted knowingly, not because it merely received notice of a reporting violation. Statoil's fair notice arguments are rejected.[63]

---

[62] R. 1203.

[63] Moreover, Statoil does not contest that by August 22, 2011, it had fair notice of its exposure to Section 1719(d)(1) penalties due to a "pre-penalty teleconference" (continued…)

## V. CONCLUSION AND ORDER

Statoil's APA challenge fails. Each of its four grounds either ignores FOGRMA's plain language, Statoil's own factual stipulations, or Statoil's express waiver. Consequently, the Government's interpretation and ONRR's penalty are lawful and not arbitrary, capricious, or an abuse of discretion. *See* 5 U.S.C. § 706(2)(A), (C). It is hereby

**ORDERED** that Statoil's Motion [Doc. # 27] is **DENIED** and the Government's Cross-Motion [Doc. # 34] is **GRANTED**.

A final judgment will be entered separately.

SIGNED at Houston, Texas, this 30th day of **November, 2018.**


NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE

---

(continued…)
where "Statoil was told that it would be subject to a civil penalty for knowing or willful failure to maintain accurate information." *See* R. 980 (Declaration of Karen Lee).

P:\ORDERS\11-2017\3664MSJ.docx  181130.2218